**KILPATRICK STOCKTON LLP**
Seth Borden (SB 4583)
31 West 52nd Street, 14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Plaintiffs the PepsiCo Salaried Employees Retirement Plan, and Maria Sharpe, Greg Heaslip, Bruce Monte and Cindy Sloat, as Plan Administrator of the PepsiCo Salaried Employees Retirement Plan.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| PEPSICO SALARIED EMPLOYEES RETIREMENT PLAN,<br><br>AND<br><br>MARIA SHARPE, GREG HEASLIP, BRUCE MONTE AND CINDY SLOAT, AS PLAN ADMINISTRATOR OF THE PEPSICO SALARIED EMPLOYEES RETIREMENT PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>VINCENT M. MANDES, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS A FIDUCIARY OF THE PEPSICO SALARIED EMPLOYEES RETIREMENT PLAN,<br><br>AND<br><br>AMERIPRISE TRUST COMPANY (FORMERLY DOING BUSINESS AS AMERICAN EXPRESS TRUST COMPANY, AS CUSTODIAN OF VINCENT MANDES' INDIVIDUAL RETIREMENT ACCOUNT,<br><br>Defendants. | JUDGE ROBINSON<br><br>08 CIV 7022<br><br>08 Civ. _____<br><br>**COMPLAINT** |

US1900 9231222.10

Plaintiffs PepsiCo Salaried Employees Retirement Plan, and the PepsiCo Administration Committee, the members of which are Maria Sharpe, Greg Heaslip, Bruce Monte and Cindy Sloat, in their capacity as Plan Administrator of the PepsiCo Salaried Employees Retirement Plan ("Plaintiffs"), by their attorneys Kilpatrick Stockton LLP, for their complaint allege as follows:

## SUBSTANCE OF THE ACTION

1.      Vincent Mandes was employed by Frito-Lay, Inc. ("Frito-Lay"), a subsidiary of PepsiCo, Inc., and during his employment became a participant in the PepsiCo Transportation Employees Retirement Plan ("Transportation Plan"). On July 1, 1997, the Transportation Plan was merged into the PepsiCo Salaried Employees Retirement Plan ("Plan"), and thereafter Mr. Mandes was a participant in the Plan. Mr. Mandes retired from Frito-Lay in 2002. Upon retirement Mr. Mandes became eligible to receive his retirement benefit from the Plan and contacted Mellon HR Solutions LLC ("Mellon"), the Plan's recordkeeper at the time, regarding his benefit. In response, Mellon sent him a letter describing his retirement benefit under the various distribution options available under the Plan. One such distribution option was a single lump sum distribution of Mr. Mandes entire Plan benefit. The Mellon letter clearly informed Mr. Mandes' that the value of his Plan benefit in the form of a single lump sum distribution was $544,256.21. In 2003, Mr. Mandes submitted to Mellon a distribution election form requesting that his entire Plan benefit be distributed to him in the form of a single lump sum distribution and to have it transferred directly to an Individual Retirement Account maintained for him by American Express Trust Company (currently doing business as Ameriprise Trust Company). This was done and $544,256.21, the single lump sum value of Mr. Mandes' entire Plan benefit, was transferred to Mr. Mandes' IRA.

US1900 9231222.11

2.      In 2004, Mr. Mandes contacted Fidelity Employers Services Company, LLC
("Fidelity"), which had replaced Mellon as the Plan's recordkeeper, and inquired as to whether
he was entitled to any benefits from the Plan.  Due to a data transfer error in connection with the
change in the Plan's recordkeepers, Fidelity's records at the time of Mr. Mandes' second inquiry
regarding his Plan benefit did not reflect the fact that Mr. Mandes had already received his entire
benefit in a single lump sum distribution.  Thus, Fidelity incorrectly informed Mr. Mandes that
he was eligible for benefits under the Plan.  Mr. Mandes, knowing that he had already received
his entire benefit in a single lump sum distribution, submitted another benefit distribution form to
Fidelity, electing a duplicate single lump sum distribution of his entire Plan benefit and directing
that the distribution be transferred to an IRA maintained for him by American Express Trust
Company (currently doing business as Ameriprise Trust Company).  Not aware of the previous
distribution of Mr. Mandes' entire Plan benefit, Fidelity mistakenly distributed a second single
lump sum in the amount of $542,049.06 and transferred it to the IRA identified by Mr. Mandes.

3.      Upon discovering the duplicate single lump sum was an erroneous overpayment,
Fidelity and representatives of the Plan Administrator contacted Mr. Mandes and repeatedly
requested that the erroneous overpayment be returned to the Plan.  Pursuant to a July 29, 2008
letter, Mr. Mandes' attorney made it clear that Mr. Mandes would not repay the erroneous
overpayment.

4.      This suit is filed under the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), pursuant to 29 U.S.C §§ 1132(a)(2) and 1132(a)(3).  Among other
potential remedies, Plaintiffs seek an accounting from Mr. Mandes with respect to the erroneous
overpayment and other property or other assets derived from any portion of the erroneous

-3-

overpayment or earnings.   In addition, because Mr. Mandes' assertion of dominion over the Plan's assets caused him to become a fiduciary, and because he has breached his fiduciary duties to the Plan, Plaintiffs seek compensatory damages from Mr. Mandes of $542,049.06 (along with appropriate earnings) to make the Plan whole for losses related to his fiduciary breach.  In the alternative, Plaintiffs seek equitable restitution of the erroneous overpayment through the imposition of a constructive trust over all funds, property or other assets that are determined attributable to the erroneous overpayment.  Finally, Plaintiffs seek an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

5.        Plaintiffs invoke the jurisdiction of this Court pursuant to 29 U.S.C. § 1132(e).

6.        Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), as the Plan is administered in this District.

## PARTIES

7.        Plaintiff the PepsiCo Salaried Employees Pension Plan (*i.e.*, the Plan) is an "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and a "defined benefit plan" under 29 U.S.C § 1002(35).  Pursuant to 29 U.S.C. § 1132(f) the Plan may sue Defendants for the relief sought.

8.        Plaintiff Maria Sharp is a member of the PepsiCo Administration Committee, which is the Plan Administrator of the Plan and, as such, is an ERISA fiduciary under § 29 U.S.C. § 1002(21).

US1900 9231222.11

9.      Plaintiff Greg Heaslip is a member of the PepsiCo Administration Committee, which is the Plan Administrator of the Plan and, as such, is an ERISA fiduciary under § 29 U.S.C. § 1002(21).

10.     Plaintiff Bruce Monte is a member of the PepsiCo Administration Committee, which is the Plan Administrator of the Plan and, as such, is an ERISA fiduciary under § 29 U.S.C. § 1002(21).

11.     Plaintiff Cindy Sloat is a member of the PepsiCo Administration Committee, which is the Plan Administrator of the Plan and, as such, is an ERISA fiduciary under § 29 U.S.C. § 1002(21).

12.     Vincent Mandes, is a Defendant in both his individual capacity and his capacity as a fiduciary under 29 U.S.C. § 1002(21) and, based on information and belief, resides at 3732 Pemberton Way High Point, North Carolina, 27265.

13.     Defendant Ameriprise Trust Company (formerly doing business as American Express Trust Company) is, based upon information and belief, the custodian of Mr. Mandes' Individual Retirement Account.

## FACTS SUPPORTING PLAINTIFFS' REQUESTED RELIEF

### I.    *Distribution of the Erroneous Overpayment:*

14.     Mr. Mandes commenced employment with Frito-Lay, a subsidiary of PepsiCo, Inc., on or around January 15, 1974 and during his employment he became a participant in the Transportation Plan.

-5-

15.    On July 1, 1997, the Transportation Plan was merged into the Plan, and thereafter Mr. Mandes was a participant in the Plan. A participant's retirement benefit under the Plan is calculated based on such factors as eligible compensation and eligible years of employment. Retirement benefits are ordinarily paid in the form of a monthly annuity, but participants may also elect to receive their entire benefit in a single lump sum distribution.

16.    On or around December 31, 2002, Mr. Mandes retired from Frito-Lay.

17.    Upon retirement, Mr. Mandes became eligible to receive retirement benefit payments under the Plan, and he asked Mellon the value of his Plan benefit. On or about December 26, 2002, Mellon responded to Mr. Mandes' inquiry by a letter. The letter to Mr. Mandes informed him that the single lump sum value of his Plan benefit was $544,256.21.

18.    In or around January 2003, Mr. Mandes submitted a Plan distribution election form to Mellon, wherein he elected to receive *his entire Plan benefit* in the form of a *single* lump sum distribution from the Plan and directed the Plan fiduciaries to transfer his entire Plan benefit to his IRA (Acct. No. 001139075056 002) maintained by American Express Trust Company (*i.e.*, Ameriprise Trust Company). The section of the benefit distribution form relating to single lump sum distributions clearly and unequivocally stated "I hereby elect to receive, in lieu of a monthly retirement benefit, a single lump sum distribution equal to the actuarial equivalent of a single life annuity. *I understand that no further retirement benefit payments will be payable to me or any other beneficiary.*" (Emphasis added).

-6-

19.    In or around February 2003, Mr. Mandes' entire Plan benefit of $544,256.21 was distributed from the Plan and transferred to the IRA (Acct. No. 001139075056002) identified by Mr. Mandes and, based upon information and belief, maintained by Ameriprise Trust Company.

20.    Subsequently, on or around March 10, 2004, Mr. Mandes contacted Fidelity and inquired as to whether any benefits were available to him under the Plan. Due to the data transfer error in connection with the change in the Plan's recordkeepers, Fidelity's records at the time of Mr. Mandes' second inquiry did not reflect the fact that Mr. Mandes had already received his entire benefit in the form of a single lump sum distribution. Rather, Fidelity's records made it appear that Mr. Mandes had never received a distribution. Thus, Fidelity mistakenly informed Mr. Mandes that he was eligible for benefits under the Plan.

21.    On or around March 10, 2004, Mr. Mandes, knowing that he had already received his entire benefit in a single lump sum distribution, submitted another benefit distribution form to Fidelity, electing a duplicate single lump sum distribution of his entire Plan benefit and directing that the distribution be transferred to the same IRA to which the earlier single lump sum distribution was sent (Acct. No. 001139075056002, as maintained for him by American Express Trust Company (currently doing business as Ameriprise Trust Company)). At the time of the duplicate distribution, because of a change in the lump sum interest rate and the passage of time, the value of Mr. Mandes' benefit was calculated to be $542,049.06.

22.    In response to Mr. Mandes' duplicate request and in light of the fact that Fidelity was unaware of the previous single lump sum distribution of Mr. Mandes' entire Plan benefit, Fidelity inadvertently made a duplicate single lump sum distribution from the Plan in the amount

-7-

of $542,049.06 and erroneously transferred the entire amount to the IRA identified by Mr. Mandes.

23.     On information and belief, Mr. Mandes' accountant asked Mr. Mandes to obtain written confirmation that he could retain the duplicate payment. Accordingly, Mr. Mandes contacted Fidelity and requested a letter from Fidelity confirming that the amount of the duplicate payment was correct. During the telephone conversation with Fidelity, Mr. Mandes concealed the fact that he had previously received a single lump sum distribution. Instead, Mr. Mandes allowed Fidelity's representative to think that his inquiry related to whether there was a small computational error in determining his benefit, stating to the Fidelity representative, "I think it might be a little bit on the high side." Unaware of the duplicate payment, Fidelity provided Mr. Mandes in response a letter indicating that there had not been such a computational error.

24.     Plaintiffs did not discover the duplicate distribution from the Plan and erroneous overpayment to Mr. Mandes' IRA until on or around April 4, 2007. Upon becoming aware of the duplicate distribution and erroneous overpayment, Fidelity and representatives of the Plan Administrator contacted Mr. Mandes and requested that he return the erroneous overpayment to the Plan. Toward this end, numerous subsequent communications occurred between Fidelity and/or the representatives of the Plan Administrator with Mr. Mandes or his attorney.

25.     It did not become clear to the representatives of the Plan Administrator that Mr. Mandes would steadfastly refuse to return the erroneous overpayment until receipt of his attorney's letter dated July 29, 2008.

26.    Based upon information and belief, Defendant Ameriprise Trust Company continues to act as the custodian of the IRA to which the erroneous overpayment was transferred and, based upon information and belief, amounts related to the erroneous overpayment remain in the IRA.

27.    By engaging in the above conduct, Mr. Mandes caused harm to the Plan and its participants by acquiring and retaining assets that rightfully and in good conscience belong to the Plan.

## II.    Mr. Mandes' Status as a Fiduciary Under ERISA:

28.    What are Plan assets is determined under ordinary notions of property rights. As an erroneous overpayment from the Plan that did not constitute a valid benefit payment and rightfully belongs to the Plan, the funds attributable to the overpayment retain their character as Plan assets and any property or other assets attributable to such funds become assets of the Plan.

29.    Under ERISA "a person is a fiduciary with respect to a plan to the extent he . . . exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C § 1002(21). "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan [or its assets], thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)." *See Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993) (emphasis in original).

30.    "[A] person's state of mind does not determine his or her fiduciary status under ERISA. *See Donovan v. Mercer*, 747 F.2d 304, 309 n. 4 (5th Cir. 1984). In this vein, "there is no requirement in the ERISA statute that a fiduciary have knowledge of his status. Congress'

-9-

intent by establishing strict fiduciary duties would be frustrated if a fiduciary could evade his duties by claiming he had no knowledge of his designation as a fiduciary." *See Chao v. USA Mining, Inc.*, 2007 WL 802590 * 9 (E.D. Tenn. Jan. 24, 2007) (holding in favor of the Department of Labor's assertion that a defendant exercised the requisite authority and control over plan assets to render him a fiduciary, even in light of defendant's assertion that he did not know that he was a fiduciary or acting in a fiduciary capacity).

31.     Mr. Mandes' purposeful exercise of dominion and control over the erroneous overpayment (*i.e.*, his acting to obtain a Plan payment that was manifestly a duplicate, his retaining it based on a letter that resulted from a misimpression that he knowingly permitted, and then his treating it as absolutely his own) caused him to become and remain a fiduciary within the meaning of 29 U.S.C § 1002(21) of ERISA

32.     At the very least, by refusing to promptly return to the Plan the funds, property or other assets that were attributable to the erroneous overpayment after being clearly informed that the second lump sum distribution was an erroneous transfer to him of Plan assets, and by asserting the right to retain such assets that he knew rightfully belonged to the Plan, Mr. Mandes asserted and then exercised the requisite discretionary authority and control over the erroneous overpayment (and any property or other assets derived therefrom) to render him a fiduciary under 29 U.S.C. § 1002(21).

## FIRST CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY

33.     Plaintiffs' repeat and re-allege each and every allegation set forth in paragraphs 1 through 32 above, and incorporate them herein by reference.

34.    Plaintiffs assert their breach of the fiduciary duty claims under section 29 U.S.C. § 1104 and pursue those breaches under 29 U.S.C. § 1132(a)(2) via 29 U.S.C. § 1109.

35.    29 U.S.C. § 1109 permits a full range of legal and equitable relief against a fiduciary to make the Plan whole for any breach of fiduciary duties to the Plan and its participants and beneficiaries.

36.    As identified in paragraphs 29 and 30 above, Defendant Vincent Mandes exercised the requisite control over Plan assets to render him a fiduciary under 29 U.S.C. § 1002(21).

37.    Mr. Mandes' refusal to return the overpayment (along with earnings equal to the greater of: (i) the amount of earnings or other appreciation that Mr. Mandes actually earned or experienced with respect to the overpayment during the time he possessed and controlled the Plan's assets, or (ii) the amount of earnings or other appreciation the Plan would have experienced during this period) constitutes a breach of the fiduciary duties of loyalty and prudence that he owes to the Plan's participants and beneficiaries under 29 U.S.C. § 1104, and it constitutes prohibited self-dealing under 29 U.S.C. §1106(b). (This earnings remedy ("Earnings") is based on the ERISA principle that a fiduciary not only must make the Plan whole, but is also prohibited from profiting from his breaches.)

38.    Mr. Mandes knew or should have known that misappropriating and dissipating Plan assets, and refusing to return the erroneous overpayment (plus Earnings) to the Plan caused harm to the Plan and its participants and beneficiaries.

-11-

39.    Mr. Mandes is liable to make the Plan whole by compensating the Plan in the amount of $542,049.06, as well as paying to the Plan the value of any Earnings from the date of the duplicate distribution until it is repaid to the Plan.

## SECOND CLAIM FOR RELIEF FOR EQUITABLE RESTITUTION

40.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 39 above, and incorporate them herein by reference.

41.    The fiduciary Plaintiffs pursue their equitable restitution claim under 29 U.S.C. § 1132(a)(3). The Plan, as a Plaintiff, pursues its claim for equitable restitution under the federal common law of ERISA.

42.    Equitable restitution under 29 U.S.C. § 1132(a)(3) and the federal common law of ERISA permits the Plaintiffs to impose a constructive trust over assets that rightfully and in good conscience belong to the Plan and can be traced to a specific fund or other property in the control of Mr. Mandes.

43.    Plaintiffs can trace the erroneous overpayment to Mr. Mandes' IRA (Acct. No. 001139075056 002) that, based on information and belief, is maintained by Ameriprise Trust Company, as custodian of the IRA.

44.    Upon information and belief, the funds attributable to the erroneous overpayment remain in Mr. Mandes' IRA.

45.    To the extent that all or any portion of the erroneous overpayment is no longer in Mr. Mandes' IRA, Plaintiffs will obtain the information necessary to trace the funds attributable to the erroneous overpayment through discovery.

-12-

46.    It is unconscionable for Mr. Mandes to retain the Plan assets (and any actual earnings thereon), which are needed to make distributions to participants who have not received their entire Plan benefit.  This is especially true in light of Mr. Mandes' unclean hands with respect to misappropriating a duplicate payment in the first instance, and his conscious failure to disclose the previous single lump sum distribution of his entire benefit during his discussions with Fidelity.

47.    Mr. Mandes' misappropriation of Plan assets and refusal to return the erroneous overpayment (plus earnings) and any property acquired from the overpayment, which rightfully and in good conscience belong to the Plan, has caused harm to the Plan.

48.    Plaintiffs seek to impose a constructive trust over, and an order to compel Defendants to return to the Plan, the assets in Mr. Mandes' IRA that are attributable to the erroneous overpayment (plus earnings) and any other property or assets attributable to the erroneous overpayment.

## THIRD CLAIM FOR RELIEF FOR AN ACCOUNTING

49.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 48 above, and incorporate them herein by reference.

50.    Plaintiffs assert their claim for an accounting under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3).

51.    The principles of trust law supplement ERISA in areas where the statute is silent. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

-13-

52.    The requirement for a fiduciary to provide an accounting of trust assets in his control is the *sine qua non* of trust law.

53.    As a fiduciary, Mr. Mandes is required to provide Plaintiffs with an accounting with respect to the erroneous overpayment, any related Earnings and any property or assets attributable to the erroneous overpayment.

54.    A failure to provide an accounting will inhibit Plaintiffs' ability to trace the erroneous overpayment and, thus, cause harm to the Plan and its participants and beneficiaries by compelling the Plan to pay for the expense of reconstructing transactions engaged in by Mr. Mandes (or on his behalf) and possibly foregoing assets attributable to the overpayment merely because of impediments to tracing the overpaid funds to other assets or other property.

55.    Accordingly, Plaintiffs seek an order compelling Mr. Mandes to provide a full accounting to Plaintiffs with respect to the erroneous overpayment, any Earnings and any property or other assets attributable to the erroneous overpayment.

## FOURTH CLAIM FOR RELIEF FOR ATTORNEYS' FEES

56.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 55 above, and incorporate them herein by reference.

57.    Section 1132(g) permits this Court to award reasonable attorneys' fees to Plaintiffs.

58.    The five factors courts must consider when ruling on an award of attorneys' fees are: (1) the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) the deterrent effect of an award of attorneys' fees, (4) the

-14-

benefit conferred on the members of the pension plan as a whole, and (5) the relative merits of the parties' positions. *See Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006).

59.     Each and every one of the above five factors weighs in favor of awarding Plaintiffs their reasonable attorneys' fees.

60.     Accordingly, Defendant Mandes should be ordered to pay Plaintiffs' reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, the fiduciary Plaintiffs and the Plan pray for judgment as follows:

61.     Compensatory damages of $542,049.06, plus Earnings, from Mr. Mandes to make the Plan whole as a result of Mr. Mandes' breach of his fiduciary duties, together with any applicable pre- and post-judgment interest on that amount;

62.     Equitable restitution pursuant to a constructive trust over all assets held by any Defendant that is determined to be attributable to the erroneous overpayment from the Plan and any Earnings or appreciation on the assets;

63.     An accounting from Mr. Mandes with respect to the erroneously overpaid funds and any property or other assets attributable to the erroneous overpayment;

64.     An award to Plaintiffs of their costs, expenses, and reasonable attorneys' fees; and

-15-

65.     Such other relief as may be just and proper.

Dated: August 9, 2008

New York, New York

                              **KILPATRICK STOCKTON LLP**


                              By: _____
                              Seth Borden (SB 4583)
                              31 W. 52nd Street, 14th Floor
                              New York, New York 10019
                              (212) 775-8700
                              (212) 775-8800

                              *Attorneys for Plaintiffs*

US1900 9231232.11